UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**
JUN 1 4 2010

CLERK

| | | |
|---|---|---|
| SUPERIOR COMPOSITE STRUCTURES, LLC, | ) ) ) | Civil No. 10-4066 |
| Plaintiff, | ) ) ) | **VERIFIED COMPLAINT** |
| vs. | ) ) | |
| ABERSHAM COMMERCIAL SERVICES, LTD., AND MALCOLM PARRISH, INDIVIDUALLY, | ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiff, Superior Composite Structures, LLC ("Superior Composite"), for its Verified Complaint alleges as follows:

### PARTIES / JURISDICTION

1. Superior Composite Structures LLC ("Superior Composite") is a South Dakota limited liability company with its principal place of business in Aledo, Illinois.

2. Upon information and belief, Abersham Commercial Services, Ltd. ("Abersham") is a foreign limited liability company registered in Wisconsin, with its principal office in Lewes, Delaware and has done business in South Dakota. Abersham is incorporated in England and in Wales.

3. Upon information and belief, Malcolm Parrish ("Parrish") is one of the owners of Abersham and the CEO of Abersham. Parrish is located and works primarily out of the Wisconsin office and did business with Superior Composite in South Dakota.

4. Because the amount of controversy is at least Seventy Five Thousand Dollars ($75,000.00) exclusive of interest and costs and between citizens of different

1

states and/or citizens of different states or citizens or subjects of a foreign state, this Court has subject matter jurisdiction pursuant to U.S.C.A 28 § 1332(a).

## GENERAL FACTS PERTAINING TO ALL CAUSES OF ACTION

5.  In July of 2007, Superior Composite, through its managers, Lee Celske and Rick Ostergaard, was introduced to Defendant, Malcolm Parrish.

6.  Over the next couple of months, Defendants provided information to Superior Composite regarding the process to make modular housing panels out of high tech eco-friendly, composite materials made from recycled glass.

7.  Defendants purported to be providing a "turn key" Ambiente Housing Plant which would have the capability of producing 500 modular houses per year (herein "Ambiente Housing Plant") as well as selling the license rights to certain technology, providing an exclusive sales and production territory, together with providing the layout, design and equipment for a physical plant and facility to manufacture the recycled glass modular housing panels.

8.  Defendants also agreed to purchase a certain number of finished modular houses that were generated from the Ambiente Housing Plant once it was operational.

9.  Defendants provided video information, wall samples and other data to Superior Composite in an effort to sell a Ambiente Housing Plant to Superior Composite.

10. In November of 2007, Superior Composite owners, Rick Ostergaard and Lee Celske visited Defendant Abersham's Milwaukee factory and were told by Defendant Parrish that the 2008 production was over 50% sold based on advance orders.

11. In January of 2008, Superior Composite began doing "ground work" to determine the location for its Ambiente Housing Plant in the State of South Dakota and began meeting with Senator Thune's office, Senator Johnson's office, the South Dakota economic development team, as well as various reservation tribal officers to determine the need in South Dakota for the use of eco-friendly modular housing panels within the state.

12. In March of 2008, Defendants informed Superior Composite that the Milwaukee factory was almost complete in setting up its facility.

13. In that same month, Superior Composite began working with the Flandreau Tribe and other local business owners to determine financing, investor interest and plant location for the Ambiente Housing Plant.

14. In April of 2008, Superior Composite received funding confirmation from the South Dakota Economic Development Commission to proceed forward with the construction of the Ambiente Housing Plant.

15. That same month, Superior Composite was provided copies of photos by Defendants of the Milwaukee plant for Superior Composite to provide to interested parties so they could ascertain a visual depiction of what Superior Composite's South Dakota Ambiente Housing Plant would look like.

16. On or about August 12, 2008, Defendant Abersham and Superior Composite entered into an Agreement in Principal outlining the terms and agreements between the parties which included but is not limited to the following contractual obligations of Abersham (herein "Agreement in Principal"):
- Providing a "turn key" Ambiente Housing Plant with a production capacity of 500 houses per year;
- Providing a technology license agreement with an exclusive territory licensing certain intellectual property to Superior Composite to manufacture modular housing systems made out of recycled glass;
- Providing an exclusive territory to Superior Composite for the sale and production of the houses;
- Providing the same with a certain project schedule;
- Providing certain personnel training to operate the Ambiente Housing Plant;
- Provide the services set forth in the Agreement in Principal for an Initial Payment of $250,000 which amount should be credited against the total project purchase price; and
- Providing all the services for a total purchase price of Nine Million Dollars ($9,000,000).

(herein the above-referenced contractual obligations of Abersham are referred to as the "Contractual Representations"). A copy of the Agreement in Principal is attached hereto and incorporated herein by reference as *Exhibit A*.

17. Defendants also agreed to purchase a significant portion of the out-put from the Ambiente Housing Plant throughout the first year of production. A letter of agreement outlining the same was provided to Superior Composite in the summer of 2008. The letter agreement provided that Defendant Abersham would purchase 100 houses from Superior Composite's Ambiente Housing Plant. A copy of the same is attached hereto and incorporated herein by reference as *Exhibit B*.

18. In the fall of 2008, a location for Superior Composite's Ambiente Housing Plant in South Dakota had been identified and approved by the Defendants.

19. In February of 2009, a factory layout and plan was sent to Superior Composite by Abersham to be used at the South Dakota Ambiente Housing Plant location.

20. In March of 2009 and April of 2009, Defendants provided two (2) more letter agreements to Superior Composite for the purchase of finished houses from Superior Composite's Ambiente Housing Plant to further induce Superior Composite to provide funds to Defendants. These orders were generated from Ambiente Housing Canada and Ambiente Native American Homes, LLC which are both affiliates of Defendants.

21. In April of 2009, Defendants made repeated assurances that the Contractual Representations would be performed and further required an additional One Hundred Thousand Dollar ($100,000) deposit to be made (herein "Additional Down Payment"). Superior Composite was given less than 24 hours to respond and agree to the payment of additional funds. A copy of the request for additional down payment was made via email communication and a copy of the same is attached hereto and incorporated herein by reference as *Exhibit C*.

22. In May of 2009, Superior Composite's working capital loan was approved and SBA approved the Superior Composite's Ambiente Housing Plant facility loan.

23. In November of 2009, repeated attempts were made to contact Defendant Parrish to schedule a meeting to discuss the status and schedule for building the Ambiente Housing Plant in South Dakota.

24. After more than five (5) attempts, Defendant Parrish agreed to meet with Lee Celske and Rick Ostergaard on behalf of Superior Composite on Sunday, December 13, 2009. At this meeting, numerous details were discussed, and oral agreements were reached, a majority of which were itemized in the email correspondence from Lee Celske, one of the owners of Superior Composite, to Parrish on or about December 14, 2009. A copy of the same is attached hereto and incorporated herein by reference as *Exhibit D*.

25. Numerous follow-up attempts were made by Superior Composite to get response from Defendants to the December 14, 2009 email correspondence. A response from Abersham was finally received on or about January 27, 2010. A copy of the same is attached hereto and incorporated herein by reference as *Exhibit E* and the response pertaining to the same appears in "red" and is underlined on said *Exhibit E*.

26. Superior Composite informed Parrish that the response set forth on the attached *Exhibit E* was not acceptable to Superior Composite.

27. On or about February 3, 2010, a demand was made by Superior Composite, to Defendants for return of the Initial Deposit together with the Additional Down Payment, in the total amount of Three Hundred Fifty Thousand Dollars ($350,000). No response to the demand for repayment was ever received.

28. On or about April 26, 2010 Defendants informed Superior Composite that it was no longer going to license the technology to Superior Composite and that it was no longer going to provide a "turn-key" Ambiente Housing Plant to Superior Composite. Parrish informed Superior Composite of the same both orally in a meeting in April of 2010 and also via letter correspondence received by Superior Composite on or about April 29, 2010. A copy of the same is attached hereto and incorporated herein by reference as *Exhibit F*.

## COUNT I
## BREACH OF CONTRACT

29. Superior Composite realleges paragraphs 1 through 28 and the same are incorporated hereafter by reference.

30. On or about August 12, 2008, for valuable consideration, Superior Composite and Defendant Abersham entered into a contract in which Superior Composite and Defendant Abersham agreed to perform the Contractual Representations and work together to build an Ambiente Housing Plant in South Dakota. *See Exhibit A.*

31. On or about August 12, 2008, pursuant to the Agreement in Principal, Defendant Abersham agreed to perform the Contractual Representations. *See Exhibit A.*

32. The purchase price for the same, as outlined in the Agreement in Principal was Nine Million Dollars ($9,000,000).

33. Defendants further agreed to purchase 100 complete houses from Superior Composite in the first year of operation of the South Dakota facility (herein "Purchase Agreement"). This guaranty of house sales was provided to Superior Composite to induce them to enter into the Agreement in Principal. *See Exhibit B.*

34. Consideration was paid by Superior Composite and accepted by the Defendants pursuant to the Agreement in Principal in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) (herein the "Initial Payment"). *See Paragraph 7, Agreement in Principal (Exhibit A).*

35. By executing the Agreement in Principal and accepting the Initial Payment of Two Hundred Fifty Thousand Dollars and no Cents ($250,000.00), Defendants agreed

to the terms of performance under the Agreement in Principal and the Purchase Agreement.

36. Defendants acknowledged and agreed in the Agreement in Principal that the payment of the Initial Payment would be credited against the total cost of the project which was $9,000,000.

37. On April 2, 2009, Defendants requested the Additional Down Payment of One Hundred Thousand Dollars ($100,000.00) to be used as a down payment for equipment the Defendants were to sell Superior Composite as part of the Agreement in Principal. This demand was made by Defendants via email dated April 2, 2009. *See Exhibit C.*

38. On April 4, 2009, Superior Composite delivered to Defendant Abersham a check for One Hundred Thousand Dollars and no Cents ($100,000.00) and Abersham accepted the same and cashed the check.

39. After months of delay regarding Defendant Abersham's performance of the Agreement in Principal and the Contractual Representations, and at Superior Composite's insistence, the parties met to discuss the status of the obligations of the Defendants. This meeting occurred on December 13, 2009, at which time an oral agreement was reached with Defendants clarifying production, marketing, testing, financing issues, and the delivery of equipment, plans and specifications to Superior Composite. Superior Composite drafted an outline of the oral agreement sent it to the Defendants on December 14, 2009. *See Exhibit D.*

40. On January 27, 2010, Defendants responded in terms that violated both the December 13, 2009 oral agreement, the Agreement in Principal, and the Purchase Agreement thereby breaching the contractual terms of the same. *See Exhibit E.*

41. The Defendants multiple material breaches of the Agreement in Principal, the Purchase Agreement and of the various oral agreements that were reached were material.

42. As a direct result of the Defendants multiple material breaches thereof, Superior Composite has suffered substantial injury and damages, including but not limited to the Three Hundred Fifty Thousand Dollars ($350,000) paid by Superior Composite pursuant to the Agreement in Principal, lost profits and lost opportunities, expenses, time and costs incurred due to Defendants nonperformance, all in amounts to be proven at trial.

## COUNT II
## NEGLIGENT MISREPRESENTATION

43.    Superior Composite realleges paragraphs 1 through 42 and the same are incorporated hereafter by reference.

44.    Superior Composite and Defendants had a financial interest pertaining to the Agreement in Principal.

45.    Defendants supplied false information to Lee Celske and Rick Ostergaard, managers of Superior Composite, regarding the Contractual Representations and Defendants made false representations of facts and promises both written and oral that they would perform the same.

46.    Defendants supplied false information to Superior Composite regarding its ability to provide a "turn key" Ambiente Housing Plant with a production capacity of 500 houses per year. Defendants represented that it had another plant in United States operational in 2008 when such factory was not yet operational and did not become operational until 2010. As of April 26, 2010, it was still not fully operational (no automatic saws and drills on the panel line).

47.    Defendants supplied false information to Superior Composite regarding its ability to provide a technology license agreement with an exclusive territory licensing certain intellectual property to Superior Composite to manufacture modular housing systems made out of recycled glass.

48.    Defendants supplied false information to Superior Composite regarding its ability to provide an exclusive territory to Superior Composite for the sale and production of the houses.

49.    Defendants supplied false information to Superior Composite regarding its ability to provide an Ambiente Housing Plant with a certain time frame and a certain project schedule.

50.    Defendants supplied false information to Superior Composite regarding its ability to provide a certain personnel training to operate the Ambiente Housing Plant.

51.    Defendants supplied false information to Superior Composite regarding its intention to credit the Initial Payment and the Additional Down Payment against the total purchase price and in fact later represented to Superior Composite that the same was for "feasibility" and was not credited against the final purchase price. *See No. 4 of Exhibit E.*

52. Defendants supplied such false information in the course of a transaction in which the Defendants had a financial interest.

53. Defendants were negligent in obtaining or communicating the information to Superior Composite.

54. Defendants supplied the information intending or knowing that Superior Composite would rely on such information.

55. Superior Composite acted reasonably in relying on the information, to Plaintiff Superior Composite's detriment.

56. Defendants conduct constitutes negligent misrepresentation.

57. As a direct result of Defendants negligent misrepresentation of the relevant facts, Superior Composite has suffered substantial injury and damages including, but not limited to the $350,000.00 paid to Defendants, and additional expenses and damages all in amounts to be proven at trial.

## COUNT III
## FRAUDULENT MISREPRESENTATION

58. Superior Composite realleges paragraphs 1 through 57 and the same are incorporated hereafter by reference.

59. Defendants made representations of fact and promises to Superior Composite without any reasonable basis for believing them to be true.

60. Defendants willfully deceived Superior Composite and intended to cause Superior Composite to act to their peril.

61. Defendants deceived Superior Composite.

62. Defendants intended or had reason to expect that Superior Composite would act in reliance on Defendants fraudulent misrepresentations.

63. Superior Composite justifiably relied upon the fraudulent statements to Superior Composite's detriment.

64. Defendants made fraudulent statements to Lee Celske and Rick Ostergaard, managers of Superior Composite, regarding the Contractual Representations and Defendants made representations of facts and promises both written and oral that they would perform the same.

65. Defendants made fraudulent statements to Superior Composite regarding its ability to provide a "turn key" Ambiente Housing Plant with a production capacity of 500 houses per year. Defendants represented that it had another plant in United States operational in 2008 when such factory was not yet operational and did not become operational until 2010. Such statements were untrue when they were made by Defendants.

66. Defendants made fraudulent statements to Superior Composite regarding its ability to provide a technology license agreement with an exclusive territory licensing certain intellectual property to Superior Composite to manufacture modular housing systems made out of recycled glass.

67. Defendants made fraudulent statements to Superior Composite regarding its ability to provide an exclusive territory to Superior Composite for the sale and production of the houses.

68. Defendants made fraudulent statements to Superior Composite regarding its ability to provide an Ambiente Housing Plant with a certain time frame and a certain project schedule.

69. Defendants made fraudulent statements to Superior Composite regarding its ability to provide a certain personnel training to operate the Ambiente Housing Plant.

70. Defendants made fraudulent statements to Superior Composite regarding its intention to credit the Initial Payment and the Additional Down Payment against the total purchase price and in fact later represented to Superior Composite that the same was for "feasibility" and was not credited against the final purchase price. *See No. 4 of Exhibit E.*

71. These fraudulent statements were made orally, in writing and through e-mail correspondence between the Plaintiff and Defendants, and included, but were not limited to, fraudulent statements concerning: time frames for completion of the facility, demand for glass houses, purchase of a minimum number of finished glass houses by Defendants, licensing of patents and technology, payments, building of the production facility, and operation of the production facility.

72. Defendants made fraudulent statements with intent to cause Superior Composite to enter into an agreement with Defendants and pay Defendants $350,000 and more knowing Defendants could not or would not perform.

73. Superior Composite relied on these fraudulent representations to its detriment.

74. Superior Composite was justified in relying upon the same.

75. As a direct result of Abersham's and Parrish's fraudulent misrepresentations and misrepresentation of the relevant facts, Superior Composite has suffered substantial injury and damages.

76. In reliance of the fraudulent misrepresentations that were made, Superior Composite and its officers dedicated thousands of hours trying to getting a facility built and operational in South Dakota.

77. Superior Composite is entitled to an amount of damages to be proved at trial for Defendants' fraudulent misrepresentation.

## COUNT IV
## DECEIT

78. Superior Composite realleges paragraphs 1 through 77 and the same are incorporated hereafter by reference.

79. Defendants made many representations as facts, which were not true at the time they were made, and were not believed or otherwise known to be true by Defendants at the time they were made.

80. Defendants asserted such facts knowing that there was no reasonable basis for believing them such facts to be true.

81. Defendants also suppressed certain facts pertaining to its ability to perform the Contractual Representations knowing that the same were not true.

82. Defendant failed to disclose certain facts that were likely to mislead Superior Composite because of the failure to communicate the facts including but not limited to the following:

- Defendants failed to disclose certain information to Lee Celske and Rick Ostergaard, managers of Superior Composite, regarding the ability of Defendants to perform the Contractual Representations;
- Defendants failed to disclose information regarding its ability to provide a "turn key" Ambiente Housing Plant with a production capacity of 500 houses per year;
- Defendants made deceitful statements to Superior Composite regarding its ability to provide a technology license agreement with an exclusive territory licensing certain intellectual property to Superior Composite to manufacture modular housing systems made out of recycled glass.

- Defendants made deceitful statements to Superior Composite regarding its ability to provide an exclusive territory to Superior Composite for the sale and production of the houses.
- Defendants made deceitful statements and failed to disclose certain information to Superior Composite regarding its ability to provide an Ambiente Housing Plant with a certain time frame and a certain project schedule.
- Defendants made deceitful statements to Superior Composite regarding its intention to credit the Initial Payment and the Additional Down Payment against the total purchase price and in fact later represented to Superior Composite that the same was for "feasibility" and was not credited against the final purchase price. *See No. 4 of Exhibit E.*

83. Defendants made such statement or failed to disclose such information without any intention of performing the Contractual Representations and other oral agreements and understandings between the parties.

84. Superior Composite is entitled to an amount of damages to be proved at trial for Defendants' deceitful suppressions of fact and statements.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For a money judgment against the Defendants and each of them for compensatory, general, and special damages in an amount to be determined at trial to reimburse Plaintiff for money's paid to Defendants and to compensate Plaintiff for Defendants' multiple breaches of contract and material misrepresentations;

2. For a money judgment against the Defendants and each of them for incidental and consequential damages, and all other proximate damages, caused by Defendants and each of them for breach of contract and material misrepresentations.;

3. For a money judgment against the Defendants and each of them for compensatory, general, special, and punitive damages in an amount to be determined at trial to compensate Plaintiff for Defendants' fraudulent misrepresentations;

4. For Plaintiff's costs and disbursements herein, including Plaintiff's attorneys' fees;

5. For prejudgment and post-judgment interest; and

6. For such further relief as the Court deems just and equitable.

Dated this _____ day of June, 2010.

**VERIFICATION OF COMPLAINT**

STATE OF SOUTH DAKOTA : 
:SS
COUNTY OF MINNEHAHA :

Lee Celske, being first duly sworn on oath, deposes and states that he is an individual residing in Illinois, that he is the Chief Executive Officer (CEO) of Superior Composite, LLC, Plaintiff, and that in that capacity, has read the attached Complaint, knows the contents thereof, and that the same is true of his own knowledge, except as to matters therein stated on information and belief, and as to those matters, he believes them to be true.

Superior Composite - Plaintiff
By: LEE A. CELSKE
Its: CEO

Subscribed to and sworn before me on this 11th day of June, 2010.

OFFICIAL SEAL
MELINDA K. GALBREATH
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 12-2-2013

Notary Public – Illinois
My commission expires: 12-2-2013

(SEAL)

12

## NOTICE OF APPEARANCE

David L. Nadolski and Amy L. Arndt of Lynn, Jackson, Shultz & Lebrun, P.C., of P.O. Box 2700, Sioux Falls, South Dakota 57101-2700, hereby note their appearance on behalf of the Plaintiff above-named.

DATED this 14th day of June, 2010.

LYNN, JACKSON, SHULTZ & LEBRUN, P.C.

David L. Nadolski
Amy L. Arndt
*Attorney for Plaintiffs*
110 N. Minnesota Ave., Suite 400
P.O. Box 2700
Sioux Falls, SD  57101-2700
(605) 332-5999
(605) 332-4249
   dnadolski@lynnjackson.com
   aarndt@lynnjackson.com

## JURY DEMAND

Plaintiff demands trial by jury of all issues triable by a jury.

David L. Nadolski/Amy L. Arndt